UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUIDEONE NATIONAL INSURANCE CO.,

                      Plaintiff,

            -v-

SYSTEMS 2000 PLUMBING SERVICE, INC., *et al*.,

                      Defendants.

22-CV-5018 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

       Plaintiff GuideOne National Insurance Company ("GuideOne"), a provider of excess insurance policies, brings this diversity action seeking a declaration that it is not obligated to reimburse Defendant Systems 2000 Plumbing Service, Inc. ("Systems 2000") for losses stemming from a fire in a residential apartment building in 2021. Systems 2000 asserts counterclaims against GuideOne, as well as crossclaims against its primary insurer, The Travelers Indemnity Company of Connecticut ("Travelers"), and its insurance broker, BNC Insurance Agency, Inc. ("BNC"). Before the Court are motions for summary judgment on all claims filed by Systems 2000, GuideOne, and BNC. For the reasons that follow, the motions are denied.

**I.    Background**

    **A.    Factual Background**

       The facts in this case, drawn from the parties' statements of material facts (*see* ECF Nos. 120 at 31-40 ("DSOF"), 126 ("BSOF"), 133 at 17-28 ("PSOF"), 130 ("TSOF")), are straightforward. Plaintiff Systems 2000 is a plumbing contractor operating in New York State

that performs at least some of its work in residential buildings. (DSOF ¶ 1.[1]) The parties vehemently dispute whether such residential work constitutes all, part, or only an "incidental" amount of Systems 2000's work. (*Compare* DSOF ¶ 2 *and* BSOF ¶ 2 *with* PSOF ¶ 2 *and* TSOF ¶ 2.) But all parties agree that the events giving rise to this lawsuit concern work that Systems 2000 performed at 303 East 37th Street, New York, New York, "a co-operative apartment building" (the "Co-op"), and a "fire that began within the wall of one of the apartments of [that building], shortly after Systems 2000's work was performed." (DSOF ¶¶ 4-5.) The fire loss occurred on March 23, 2021, at which time Systems 2000 was covered by a primary insurance policy issued by Counterclaim Defendant Travelers (the "Primary Policy"). (*Id.* ¶ 24.) In addition to the Primary Policy, Systems 2000 had, by March 2021, procured excess insurance coverage from Plaintiff GuideOne (the "Excess Policy"). (*Id.* ¶¶ 31, 35.) Counterclaim Defendant BNC is an insurance broker that prepared Systems 2000's insurance submission, which was used to apply for and procure both the Primary and Excess Policies. (*Id.* ¶¶ 6-8.) Systems 2000's application was routed directly to Travelers by BNC (*see* DSOF ¶¶ 7-8, 17; BSOF ¶¶ 106-113), and was routed to GuideOne through an intermediate broker called RT Specialty (*see* DSOF ¶ 8; BSOF ¶¶ 68-69, 82, 90).

At the time it was approved, the Primary Policy included an exclusion for work performed in certain residential buildings. (DSOF ¶ 21.) The Excess Policy was a "'follow form' policy," which meant that its terms "follow[ed] the terms exactly for those policies that are scheduled in the underlying" Primary Policy. (*Id.* ¶ 36.) The Excess Policy also included a clause reserving GuideOne's "right to refuse to follow any . . . change [made after the inception date of the policy] to the Scheduled Underlying Insurance, in which event this policy shall apply

---

[1] Where facts are undisputed, the Court cites only Systems 2000's statement of facts.

as if the changes had not been made." (*Id.* ¶ 37.) The parties dispute whether and to what degree the various employees involved in approving Systems 2000's coverage believed that the policies would exclude Systems 2000's work on the Co-op. (*Compare* DSOF ¶ 29 *with* TSOF ¶ 29.)

Following the fire, Systems 2000 submitted claims to both Travelers and GuideOne. (*See id.* ¶¶ 57-65.) Travelers initially denied coverage on April 27, 2021. (*Id.* ¶ 61; *see also* ECF No. 120-17). Then, on June 28, 2021, Travelers reformed the Primary Policy to eliminate the residential-work exclusion and rescinded its previous denial of coverage. (DSOF ¶¶ 25-27, 62; *see also* ECF No. 120-18.) As a result, Travelers agreed to pay for Systems 2000's liability up to the $2,000,000 policy limit. (ECF No. 120-18 at 2.) Travelers' letters were signed by Michael Machado. (*Id.*; ECF No. 120-17 at 6.)

GuideOne received notice of Travelers' initial coverage denial on April 29, 2021 (DSOF ¶ 61), and sometime later received notice that Travelers had reformed the policy and rescinded its denial (*id.* ¶ 62; *see also* ECF No. 120-18 at 2 ("Travelers is . . . notifying . . . Guide One, by way of Guide One being copied on this letter.")). Sometime between June 28, 2021 and October 14, 2021, GuideOne requested a "coverage opinion" from Travelers. (DSOF ¶ 62; *see also* ECF No. 120-8 at 54-55.) After obtaining the coverage opinion, GuideOne disclaimed coverage on November 23, 2021 on the basis that Travelers' reformation was a "change" that GuideOne was not obligated to follow. (DSOF ¶¶ 63-64; *see also* ECF No. 120-19.) GuideOne's relevant claims adjuster was Kari Pearson. (DSOF ¶ 57.)

### B. Procedural Background

GuideOne filed the original complaint in this action on June 16, 2022, seeking a declaration of nonliability for Systems 2000's losses. (ECF No. 2.) In the complaint, GuideOne named Systems 2000, the corporation that owns the Co-op, the individual owners, and the subrogees of the individual owners. (*Id.*) Systems 2000 filed an answer, including

counterclaims, on August 12, 2022 (ECF No. 4), and filed a third-party complaint against Travelers and BNC on August 26, 2022 (ECF No. 5). GuideOne then filed an amended complaint on December 15, 2022 (ECF No. 25), and Systems 2000 filed an updated answer on February 23, 2023 (ECF No. 69). All other parties answered,[2] and discovery was completed in August 2024. (ECF No. 118.)

On September 30, 2024, Systems 2000 filed a "Motion to Comply," which the Court construes as a motion for summary judgment. (ECF No. 120.) In it, Systems 2000 seeks judgments declaring that GuideOne is liable for the amount of Systems 2000's loss in excess of the amount covered by Travelers, that Travelers and BNC are liable in negligence for any loss not ultimately covered by GuideOne, and that GuideOne is liable for costs and fees associated with this lawsuit. (*Id.* at 2.) Systems 2000 also filed an "Affirmation in Support" (*id.* at 7-30), a statement of material facts pursuant to Local Rule 56.1 (DSOF), and a memorandum of law (ECF No. 120-22 ("S2 Mem.").) One of the subrogees of one of the individual owners—Garrison Property and Casualty Insurance Company, as subrogee of Lauren Schloss—and the Co-op corporation joined in Systems 2000's motion for summary judgment on October 10, 2024 and October 31, 2024, respectively. (ECF Nos. 122, 127.)

BNC filed a cross-motion for summary judgment on October 31, 2024 (ECF No. 123), along with a memorandum of law (ECF No. 125 ("BNC Mem.")), affirmation (ECF No. 124), and counterstatement of material facts (BSOF). The cross-motion also functions as a partial opposition to Systems 2000's motion for summary judgment. (BNC Mem. at 3.) In it, BNC

---

[2] The parties that suffered losses from the fire filed crossclaims for negligence against Systems 2000. (*See, e.g.*, ECF No 74 at 13; ECF No. 75 at 10-11.)

supports Systems 2000's request for judgment that GuideOne is liable for the full excess loss. (*Id.*)[3]

Travelers opposed Systems 2000's motion for summary judgment on October 31, 2024 (ECF No. 129 ("Tr. Opp.")), and filed a supporting declaration (ECF No. 128) and counterstatement of material facts (TSOF).

GuideOne filed a cross-motion for summary judgment on October 31, 2024 (ECF No. 132), along with a supporting memorandum of law (ECF No. 133 ("GuideOne Mem.") at 1-16), and a counterstatement of material facts (PSOF).

On November 26, 2024, Systems 2000 filed an opposition to BNC's cross-motion, titled "Affirmation in Reply and in Opposition to BNC's Cross Motion" (ECF No. 134), and an opposition to GuideOne's cross-motion, titled "Affirmation in Reply and in Opposition to the Cross Motion to GuideOne" (ECF No. 135). Systems 2000 did not reply in a timely manner in support of its own motion for summary judgment.[4] GuideOne replied in support of its cross-

---

[3] BNC noted that these papers are also intended to oppose the Co-op. corporation's motion to join in System's 2000's motion. (ECF No. 137.)

[4] Any reply in support of Systems 2000's initial motion for summary judgment was, per an agreed-upon and so-ordered schedule, due no later than November 15, 2024 (ECF Nos. 118, 119). But Systems 2000 did not submit anything further until November 26, 2024, when it filed a document titled on ECF "Reply Affirmation . . . re: 122 Motion for Joinder," referring to Garrison Property and Casualty Insurance Company's motion to join Systems 2000's motion for summary judgment. (ECF No. 136.) Notwithstanding the title, the document is an "Affirmation in Reply and in Opposition to Travelers' Cross Motion." (*Id.* at 1.) However, as Travelers has pointed out (ECF No. 142 ¶ 6), it did not file a cross-motion, and only opposed Systems 2000's motion for summary judgment. (Tr. Opp.) Accordingly, the document filed by Systems 2000 at ECF Number 136 is an untimely reply brief that the Court will disregard.

BNC has also filed multiple improper documents that the Court will disregard. Like Systems 2000, BNC filed a document titled on ECF "Reply Affirmation . . . in Opposition re: 122 Motion for Joinder" on December 3, 2024, which also purported to oppose Travelers' "cross-motion." (ECF No. 138.) Travelers, however, did not move for summary judgment as to either Systems 2000 or BNC. BNC, for its part, did not move for summary judgment as to Travelers, nor did it purport to join those parts of Systems 2000's motion for summary judgment

5

motion on December 3, 2024 (ECF No. 140), and BNC replied in support of its cross-motion on December 17, 2024 (ECF No. 141).

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In deciding a motion for summary judgment, a court must consider the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

## III. Discussion

Distilling down the parties' voluminous filings reveals several discrete questions relevant to all the pending motions and cross-motions for summary judgment. First, is GuideOne liable for Systems 2000's excess losses, either because Travelers' reformation was not a "change" to

---

against Travelers. Accordingly, whatever purpose BNC believes that its filing at ECF Number 138 serves, it is improper.

On the same day, BNC filed a "Reply Memorandum of Law" in opposition to GuideOne's cross-motion for summary judgment. (ECF No. 139.). But, to the extent BNC meant to reply in support of those portions of Systems 2000's motion that it joined, the filing is untimely. The Court also will not interpret this document as BNC's reply in support of its own motion, as it clearly filed such a document on December 17, 2024. (ECF No. 141.) And BNC could not oppose GuideOne's cross-motion, as GuideOne did not move for summary judgment as to anything involving BNC. Accordingly, the filing at ECF Number 139 is also improper and the Court will disregard it.

Ultimately, disregarding these improperly filed documents merely serves the interests of judicial economy by streamlining this Opinion. Having reviewed the documents, the Court is assured that they do not include any novel arguments not already covered in depth elsewhere in the parties' briefs, affirmations, and statements.

the original policy and was therefore automatically incorporated into GuideOne's "follow form" policy, or because "GuideOne's intent was to provide Systems 2000 with coverage in connection with their work on residential properties"? (S2 Mem. at 6-7.)[5]  Second, if GuideOne is not liable, is either Travelers or BNC liable for any excess losses based on its own negligence? (*Id.* at 17-21.)  Third, if GuideOne is liable, is Systems 2000 entitled to fees and costs? (*Id.* at 21-24.)  Neither GuideOne's nor BNC's cross-motions raise distinct issues, so the Court addresses them along with Systems 2000's original motion for summary judgment.

### A. GuideOne's Liability

#### 1. Notice

As a threshold issue, Systems 2000 and BNC argue that GuideOne is prohibited from disclaiming coverage because it unreasonably delayed providing formal notice of its disclaimer. (S2 Mem. ¶¶ 59-73; BNC Mem. at 10-12.)  However, Systems 2000 and BNC invoke a provision of New York Insurance Law—Section 3420(d)(2)—that by its terms applies only to

---

[5] Systems 2000 also argues that the residential exclusion "as written does not apply" because it includes only "residential apartment[s]" and not "co-operative buildings." (S2 Mem. ¶¶ 3-7.)  GuideOne responds that this is "an exercise in semantics," as a co-op building is clearly a residential apartment building. (GuideOne Mem. ¶ 23.)  The Court agrees with GuideOne.  The exclusion was clearly written to encompass all forms of residential housing, whatever the precise ownership structure.  It accordingly includes such broad categories as "multi-family housing" and "residential apartment[s]," both of which apply to co-op buildings.  Indeed, even Systems 2000 refers to 303 East 37th Street as a "co-operative *apartment building.*" (S2 Mem. ¶ 6 (emphasis added).)  Because the contract language is unambiguous, it need not reach Systems 2000's alternative arguments about the *contra proferentem* canon of interpretation. (*Cf. id.* ¶¶ 8-17.)  Moreover, the Court is skeptical that the canon would apply to GuideOne, as GuideOne did not draft the underlying insurance policy, Travelers did.  *See Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co.*, 206 F. Supp. 3d 818, 826 (S.D.N.Y. 2016), *aff'd sub nom. Zurich Am. Ins. Co. v. Liberty Mut. Ins. Co.*, 710 F. App'x 3 (2d Cir. 2017) ("[T]he rule of *contra proferentem* . . . provides [that] the ambiguity must be resolved against the insurer which drafted the contract.  This insurance-specific principle derives from the broader *contra proferentem* principle, which holds that equivocal contract provisions are generally to be construed against the drafter." (quotation marks omitted)).

claims "for death or bodily injury arising out of a motor vehicle accident or any other type of accident." N.Y. Ins. Law § 3420(d). The source of loss in this case is property damage, not death or bodily injury. Accordingly, the strict notice requirement in Section 3420(d)(2) does not apply. *See KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 23 N.Y.3d 583, 590 (2014) ("Where, as here, the underlying claim does not arise out of an accident involving bodily injury or death, the notice of disclaimer provisions set forth in Insurance Law § 3420(d) are inapplicable." (quotation marks omitted)); *Swanson v. Allstate Ins. Co.*, 150 A.D.3d 1299, 1300 (2d Dep't 2017) (same); *Wm. McCullough Transp. Co. v. Providence Washington Ins. Co.*, No. 86-CV-6448, 1989 WL 99776, at *2 (S.D.N.Y. Aug. 18, 1989) (same).[6]

### 2. Reformation

According to GuideOne, Travelers' decision to cover Systems 2000's losses despite the residential exclusion in the Primary Policy constitutes a "change" that GuideOne is not required to honor with respect to the Excess Policy. (GuideOne Mem. ¶¶ 31-44.) By the plain terms of the Excess Policy, GuideOne is correct that it is not required to follow changes to the Primary Policy, notwithstanding the general follow-form structure of the Excess Policy. (ECF No. 120-16 at 10 ("[GuideOne] reserve[s] the right to refuse to follow any such change(s) to the 'Scheduled Underlying Insurance', in which event this policy shall apply as if the change(s) had not been made.").)

Systems 2000 responds that Travelers' "reformation" of the Primary Policy "was not a 'change', per se, but was done to reflect the actual understanding of the parties' agreement," and that it therefore falls outside the "change" clause in the Excess Policy. (S2 Mem. ¶ 27.) In

---

[6] GuideOne, in its opposition / cross-motion for summary judgment, does not address this argument. However, because Systems 2000 and BNC rely on incorrect statements of law, the Court will not grant summary judgment in their favor on this basis.

support, Systems 2000 cites case law concerning the equitable remedies of reformation and rescission, which "may be appropriate where a writing does not set forth the actual agreement of the parties." *See, e.g.*, *Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*, 322 F. Supp.2d 482, 495 (S.D.N.Y. 2004); *see also* 31 N.Y. Prac., New York Insurance Law § 9:13 (2021-2022 ed.) ("The reformation of an insurance policy does not change the terms of the contract, but rather declares what those terms were.").

As a matter of contract interpretation, Systems 2000 is wrong that "change" necessarily excludes this so-called "reformation" as a matter of law. "The role of the Court when interpreting contracts is to give effect to the expressed intentions of the contracting parties." *Matter of Arb. between Mitsubishi Corp. of Tokyo & Conakry*, No. 92-CV-8587, 1993 WL 254994, at *2 (S.D.N.Y. June 30, 1993). "When the language of a contract is ambiguous and there is relevant extrinsic evidence regarding the actual intent of the parties, an issue of fact is presented for a jury to resolve, thereby precluding summary judgment." *Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir.2001). It is at the very least reasonable to interpret "change" as encompassing a voluntary "reformation," even if Systems 2000 is correct that it may also be reasonable to interpret "change" as excluding such a "reformation." (*Cf.* GuideOne Mem. at 9-10 (collecting cases describing a contract "reformation" as a "change").)

Moreover, what Systems 2000 and Travelers did here was not even a true reformation—a court-ordered remedy that may be denied for lack of sufficient evidence or due to misconduct by a party. *See* Restatement (Second) of Contracts § 155 (1981) ("Since the remedy of reformation is equitable in nature, a court has the discretion to withhold it, even if it would otherwise be appropriate, on grounds that have traditionally justified courts of equity in withholding relief."). Because "[t]he judicial remedy of rescission [or reformation] of a contract is rooted in

9

considerations of equity[,] [a] court may shape the rescission [or reformation] . . . remedy in order to serve substantial justice." 28 Williston on Contracts § 70:237 (4th ed.).[7] None of those safeguards and restrictions apply to a voluntary agreement between parties to a contract to retroactively alter its meaning. There is thus no legal basis for differentiating the so-called "reformation" that occurred here from an ordinary contract modification. To hold otherwise would eviscerate settled common-law protections for the rights of third-party beneficiaries and bona fide purchasers, and would create substantial incentives for contracting parties to falsely claim the protection of mutual mistakes to avoid obligations to others. *Cf. Sch. Excess Liab. Fund v. Westchester Fire Ins. Co.*, 12 Cal. Rptr. 3d 626, 631 (Cal. Ct. App. 2004) (Where

---

[7] For example, courts generally will not grant reformation—even where mutual mistake is involved—where doing so would adversely affect the vested rights of innocent third parties. *See Trs. of Four Joint Boards Health & Welfare & Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 347 n.6 (S.D.N.Y. 1994) ("[A] promisor and promisee are not free to modify or discharge the promisor's duty to an intended third-party beneficiary of the contract after the beneficiary's rights have vested."); *see also* Restatement (Second) of Contracts § 155 (1981) ("The claim of a mistaken party to reformation, being equitable in its origin, is subject to the rights of good faith purchasers for value and other third parties who have similarly relied on the finality of a consensual transaction in which they have acquired an interest in property."); 27 Williston on Contracts § 70:45 (4th ed.) (same); *cf. In re Kalisch*, 413 B.R. 115, 135 (Bankr. S.D.N.Y. 2008), *aff'd*, No. 09-CV-1636, 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009) ("Under New York law, reformation of title documents is permitted, but only if it would not prejudice the rights of a bona fide purchaser or subsequent lien holder."). Whether or not a court, in its discretion, could *order* a reformation that is binding on interested third parties, parties to a contract certainly cannot do so on their own by mere fiat. *Cf. Coakley v. State*, 196 N.Y.S.2d 793, 796 (N.Y. Ct. Cl. 1960) (allowing "the parties [to] do voluntarily what a court of equity would have compelled them to do," but implicitly assuming the applicability of a "bona fide purchaser" exception with respect to third parties).

    Furthermore, the parties have not identified, and the Court is unaware of, any pertinent New York case law addressing the effect of court-ordered reformation of an underlying insurance policy on a follow-form excess policy. *Cf. Heim v. Lee*, 654 N.W.2d 161, 163 (Minn. Ct. App. 2002) (declining to enforce a reformation where it would preclude an insured from recovering from a source of excess insurance); *L. E. Myers Co. v. Harbor Ins. Co.*, 394 N.E.2d 1200, 1203 (Ill. 1979) (enforcing a reformation where an excess carrier had not relied on the initial version of the primary policy). But because Systems 2000 and Travelers did not actually effect a true reformation, that is ultimately irrelevant.

"adverse impact to third parties is apparent," contracting parties "are not free merely to decide between themselves that something other than their clear written provision was their initial intent," and instead, "[a] court of equity must look at the whole picture in deciding if there was mutual mistake that permits reformation.").

Accordingly, the "change" clause in the Excess Policy can be reasonably interpreted as applying to the voluntary "reformation" executed by Systems 2000 and Travelers, thereby relieving GuideOne of its obligation to adopt Travelers' decision to cover Systems 2000's loss. Thus, Systems 2000 cannot prevail on its motion for summary judgment as to GuideOne. However, as explained below, there are other potential reasons why GuideOne may be liable for Systems 2000's loss. GuideOne is therefore not entitled to summary judgment merely because it is not obligated as a matter of law to follow Travelers' unilateral reformation.

### 3. Mistake

Even if GuideOne is not obligated to provide coverage because the Excess Policy follows form, it may still be required to do so if the Excess Policy arose from a mutual mistake by GuideOne and Systems 2000. *See St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co. of Am.*, No. 91-CV-6151, 1994 WL 167943, at *3 (S.D.N.Y. May 2, 1994) ("[T]he court may reform an unambiguous policy if, due to mutual mistake, the writing does not reflect the mutual intention of the parties at the time of the agreement."); *Cammeby's Mgmt. Co. v. Affiliated FM Ins. Co.*, No. 13-CV-2814, 2014 WL 2451567, at *5 (S.D.N.Y. May 29, 2014). "Where there is mutual mistake, parol evidence may be introduced to prove the actual agreement of the parties." *St. Paul Fire & Marine Ins. Co.*, 1994 WL 167943, at *3; *see also Capparelli v. Vitiritti*, 643 N.Y.S.2d 656, 658 (1996) ("[P]arol evidence is admissible to reform a contract on the basis of mutual mistake."). But "New York law does not permit reformation or rescission of a contract for unilateral mistake alone," and mutual mistake must be demonstrated by clear and convincing

11

evidence in order to "avoid the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different contract." *Travelers Indem. Co. of Ill.*, 322 F.Supp.2d at 495-96.

Here, Systems 2000 attests that it, and its primary insurance broker Janine Bartolini, sought insurance coverage for residential work.  (DSOF ¶¶ 2, 6, 7, 34.)  The question, then, is whether GuideOne also knew that Systems 2000 sought residential coverage and intended to provide that coverage.  Systems 2000 alleges that GuideOne, in reviewing Systems 2000's insurance proposal, reviewed a risk analysis report solicited by RT Specialty and prepared by a company called Applied Risk.  (*Id*. ¶ 35, 38-39.)  The report noted that Systems 2000 performed work in residential buildings (*id.* ¶ 41), and GuideOne's representative at RT Specialty was allegedly aware of the residential work as well (*id.* ¶ 34).  GuideOne also concedes that its employee who approved the Excess Policy, Schiavone (*id.* ¶¶ 34-35), "confirmed that he knew that Systems 2000's work was performed within residential buildings (*id.* ¶ 48; *see also* PSOF ¶ 48).  Systems 2000 argues that this means Schiavone would have known that a policy excluding residential work would have been "illusory" in the sense that GuideOne "would [n]ever be required to pay out on any claim."  (DSOF ¶¶ 55-56.)

Plaintiffs are correct that an insurance policy may be unenforceable as illusory where it contains exclusions so broad as to "defeat *all* of the coverage afforded under the policy[]." *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 685 (2017); *accord Hall v. Mountain Valley Indem. Co.*, No. 23-CV-2496, 2024 WL 4635329, at *3 (S.D.N.Y. Oct. 30, 2024).  And, to the extent that a policy would be unenforceable, a reasonable jury might conclude that an insurer would not knowingly issue it.

Whether that is the case here, though, is not resolvable at summary judgment. The answer requires determining whether enough of Systems 2000's work was residential such that a commercial-only policy would be illusory, and whether GuideOne was actually aware of those facts when it issued the Excess Policy. *See* 28 Williston on Contracts §§ 70:247, 70:249 (4th ed.) (reformation allowed only for mutual mistakes); *cf. World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 168 (2d Cir. 2003), *abrogated on other grounds by Wachovia Bank v. Schmidt,* 546 U.S. 303 (2006) (an excess insurer that agrees to follow form is entitled to a chance to review and reject the primary policy, and will not be bound to its terms without such opportunity). Both of those are questions of fact and witness credibility not properly resolved on summary judgment. *See Allen v. W. Point-Pepperell, Inc.*, 908 F. Supp. 1209, 1223 (S.D.N.Y. 1995) (quoting *Equal Emp. Opportunity Comm'n v. Home Ins. Co.*, 672 F.2d 252, 257 (2d Cir. 1982)) ("In light of the court's obligation to draw all reasonable inferences against the nonmoving party, summary judgment is rarely appropriate where the moving party's state of mind is a material issue.").

Thus, neither Systems 2000 nor GuideOne is entitled to summary judgment on the question of whether the Excess Policy should be reformed so as to cover losses stemming from Systems 2000's residential work.[8]

### B.   Claims Against BNC

Systems 2000 also seeks to hold BNC liable for its losses in the event that GuideOne is not found liable. (S2 Mem. ¶ 74.) Formally, Systems 2000 has asserted claims against BNC sounding in negligence, malpractice, and breach of contract. (ECF No. 5 ¶¶ 41-64.) In its

---

[8] Technically, Systems 2000's counterclaim against GuideOne requests declaratory relief that GuideOne is obligated to "follow form" with respect to Travelers' reformation, which the Court construes as a claim for reformation. (ECF No. 69 ¶¶ 71, 78.)

motion for summary judgment, though, Systems 2000 discusses only its negligence claims. (*See* S2 Mem. ¶¶ 74-81.) BNC, in its cross-motion, argues that "the claims against BNC should be dismissed in their entirety," explicitly mentioning "Systems 2000's causes of action against BNC for malpractice, negligence and breach of contract." (BNC Mem. at 17 (capitalization altered)).[9] The Court therefore considers Systems 2000's malpractice and breach of contract claims abandoned and addresses only its negligence claim. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned.").

Neither party is entitled to summary judgment on Systems 2000's negligence claims. The contested issues—including whether BNC adequately informed Travelers that Systems 2000's work was residential in nature, whether Travelers "hid[]" or "disguised" the exclusion in the proposal it shared with BNC (BNC Mem. at 20), and whether BNC was adequately diligent in reviewing that proposal—are all paradigmatic fact questions properly reserved for a jury. Similarly, determining whether BNC or Systems 2000 had reasonable expectations of how their counterparties would act requires making fact-laden judgments of credibility and industry practice also inappropriate for summary judgement.

Accordingly, both Systems 2000's and BNC's motions for summary judgment as to Systems 2000's negligence claim against BNC are denied.

---

[9] While BNC phrases most of its substantive arguments in terms of negligence, they generally apply to Systems 2000's putative malpractice and contract claims as well.

### C. Travelers

Unlike BNC, Travelers does not move for summary judgment, only opposing Systems 2000's request for summary judgment that Travelers is liable based on its alleged negligence. (Tr. Opp. at 4-5.) For reasons similar to those already explained, Systems 2000 is not entitled to summary judgment either that Travelers erred in including the residential exclusion, or that it failed to adequately communicate its reformation to GuideOne. Not only are there material disputes of fact as to both, but the record, if anything, lends more support to Travelers' arguments than to Systems 2000's. Systems 2000's motion for summary judgment as to its claims against Travelers is therefore denied.

### D. Costs and Fees

Because Systems 2000's is not entitled to summary judgment, the Court need not reach its arguments about costs, which all assume that Systems 2000 has prevailed on the merits.

## IV. Conclusion

For the foregoing reasons, all parties' motions for summary judgment are DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 120, 121, 122, 123, and 132.

The parties are directed to confer and file a joint status letter within 14 days of the publication of this opinion, addressing (1) proposed trial dates from September 2025 through December 2025, (2) anticipated length of trial, (3) whether some or all claims will be tried to a jury or before the Court, and (4) the status of any ongoing settlement negotiations.

SO ORDERED.

Dated: July 11, 2025
New York, New York

J. PAUL OETKEN
United States District Judge