UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUIDEONE NATIONAL INSURANCE CO.,
Plaintiff,

-v-

SYSTEMS 2000 PLUMBING SERVICE, INC., *et al.*,
Defendants.

22-CV-5018 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Before the Court is a motion for attorney's fees filed by Defendant Systems 2000 Plumbing Service, Inc. ("Systems 2000"). (ECF No. 183.) Systems 2000 seeks reimbursement for the attorney's fees that it incurred in litigating this declaratory judgment action brought by Plaintiff GuideOne National Insurance Company ("GuideOne"). For the reasons that follow, Systems 2000's motion for attorney's fees is granted.

## I. Background

The Court assumes familiarity with the factual and procedural background of this case as set forth in its December 22, 2025 opinion and order, and recites that background only insofar as it is relevant to the pending motion. (*See generally* ECF No. 165.)

Systems 2000 is a plumbing contractor that performs work in residential buildings in New York. (ECF No. 164 at 2.) On March 23, 2021, a large fire occurred at 303 East 37th Street, a co-operative apartment building that had retained Systems 2000 to replace isolation valves in the building's plumbing system. (*Id.*; ECF No. 165 at 2.)

At the time of the fire, Systems 2000 had a primary insurance policy (the "Primary Policy") with the Travelers Indemnity Company of Connecticut ("Travelers") with a $2 million

limit, as well as an excess insurance policy (the "Excess Policy") issued by GuideOne with a $4 million limit. (ECF No. 164 at 2.) The Primary Policy attached a list of exclusions to its coverage, and one such exclusion applied to work on projects in residential apartments. (*Id.* at 3.) The Excess Policy was a "follow form" excess policy, so its terms—including its exclusions—"followed" the terms of the underlying Primary Policy. (*Id.*) However, the Excess Policy also included a clause reserving GuideOne's right to refuse to adopt any changes implemented in the Primary Policy after the Excess Policy's inception date. (*Id.*)

After the fire, Systems 2000 submitted claims to both Travelers and GuideOne. (*Id.*) After initially denying coverage, Travelers voluntarily reformed its policy by removing the residential exclusion from the Primary Policy. (*Id.*) GuideOne, however, maintained that it was not obligated to cover the claims under the Excess Policy. (*Id.*) GuideOne contended that Travelers' reformation constituted a "change" that GuideOne was not obligated to follow. (*Id.*)

On June 16, 2022, GuideOne filed its original complaint against Systems 2000,[1] seeking a declaration that GuideOne "ha[d] no obligation to indemnify or defend Systems 2000." (ECF No. 2 at 9-10.) Systems 2000 answered (ECF No. 4), before filing a third-party complaint against Travelers and BNC Insurance Agency, Inc. ("BNC") asserting, *inter alia*, negligence claims (ECF No. 5). GuideOne then filed an amended complaint on December 15, 2022 (ECF No. 25), which Systems 2000 answered on February 23, 2023 (ECF No. 69). Systems 2000 also filed a counterclaim against GuideOne, alleging breach of contract and seeking a declaration that GuideOne was required to "follow form" with Travelers' policy and provide coverage. (*Id.*) The parties filed cross-motions for summary judgment (ECF Nos. 120, 123, 132), which the

[1] GuideOne's amended complaint also names other defendants who GuideOne anticipated would "make a claim against Systems 2000 and/or against the GuideOne policy for damages, either individually or as subrogors." (ECF No. 25 ¶ 39.)

Court denied on July 11, 2025 (ECF No. 144). Following a bench trial, the Court ruled for Systems 2000, finding that "GuideOne is required to afford coverage to Systems 2000 under the Excess Policy for claims arising from the March 23, 2021 Manhattan fire loss" on mutual mistake and illusory contract grounds. (ECF No. 165 at 21-25.)

On April 3, 2026, Systems 2000 filed the instant motion for attorney's fees (ECF No. 183), accompanied by a memorandum of law (ECF No. 183-12 ("Mem.")). GuideOne filed its opposition on May 1, 2026. (ECF No. 184 ("Opp.").) Systems 2000 filed its reply on May 14, 2026. (ECF No. 185 ("Reply").)

## II. Legal Standard

"The awarding of attorneys' fees in diversity cases such as this is governed by state law." *Trade Links, LLC v. BI-QEM SA de CV*, No. 24-418-CV, 2025 WL 1416759, at *3 (2d Cir. May 15, 2025) (summary order) (quoting *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985), *cert. denied*, 146 S. Ct. 303, 223 L. Ed. 2d 125 (2025). "Under New York law, it is 'well settled that an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk.'" *Emps. Mut. Cas. Co. v. Key Pharm.*, 75 F.3d 815, 824 (2d Cir. 1996) (per curiam) (quoting *Sukup v. State*, 227 N.E.2d 842, 844 (N.Y. 1967)).

The New York Court of Appeals recognizes a narrow exception to the default rule: An insured may recover attorney's fees from its insurer "when [the insured] has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979); *see also U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 780 (N.Y. 2004) ("[A]n insured who prevails in an action brought by an insurance company seeking a declaratory

judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured.").

Separately, the Court may award attorney's fees upon a showing of "such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Sukup*, 227 N.E.2d at 844. There is "a very strong presumption against bad faith liability" on the part of the insurer that "can be rebutted only by evidence establishing that the insurer's refusal to defend was based on 'more than an arguable difference of opinion and exhibited a gross disregard for its policy obligations.'" *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624-25 (2d Cir. 2001) (quoting *Sukup*, 227 N.E.2d at 844). "Indeed, such a claim depends on a showing of 'egregious conduct' on the insurer's part." *Steadfast Ins. Co. v. Portsmouth JV*, 629 F. Supp. 3d 154, 165 (S.D.N.Y. 2022) (quoting *Hastings Dev., LLC v. Evanston Ins. Co.*, 701 F. App'x 40, 45 (2d Cir. 2017) (summary order)).

## III. Discussion

As noted above, the New York Court of Appeals held in *City Club Hotel* that "under *Mighty Midgets*, an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured." 822 N.E.2d at 780. In *Liberty Surplus Insurance Corporation v. Segal Company*, however, the Second Circuit cast doubt on the recoverability of fees in cases in which an *excess* carrier, rather than a *primary* carrier, seeks a declaration disclaiming its duty to defend. 420 F.3d 65, 69 (2d Cir. 2005) (per curiam). The Second Circuit explained that the rationale underlying *Mighty Midgets* and *City Club Hotel* "is that an insurer with a duty to defend must provide a defense (or reimburse the insured's litigation expenses) for any action arising out of the claim or occurrence

that triggers the duty to defend, including an action brought by the insurer itself." *Id.* In other words, "it is the contractual agreement to provide a defense that gives rise to the basis for attorneys' fees." *Id.* Unlike primary insurers, whose duty to defend "would have ripened upon the assertion of the underlying claims," excess carriers have, "at best, only a secondary duty [to defend] that is entirely contingent on the exhaustion of the underlying policies and that has never actually been triggered." *Id.* Thus, the Second Circuit held that "because [the excess carrier] has no current duty to defend the [underlying] claims, it would seem that [the excess carrier] has no ripened contractual duty to 'defend' the current action," such that awarding fees to the insured would be improper. *Id*.

Importantly, the Second Circuit stopped short of holding that an insured may *never* recover fees from an excess carrier whose duty to defend had not yet been triggered. Indeed, *Liberty Surplus* recognizes that "[t]here may be cases where an excess insurer's duty to defend has not actually been triggered, but where it likely will be and the excess insurer has brought a declaratory judgment action to avoid a looming duty to defend." *Id*. The Second Circuit "express[ed] no opinion on whether *Mighty Midgets* could support attorneys' fees in such a situation." *Id.*

The Court concludes that *Liberty Surplus* does not dispose of this case because GuideOne's duty to defend is "looming" and "likely will be" triggered. *Id*. Unlike the insured in *Liberty Surplus*, which offered "no suggestion that [the excess carrier] [would] have to provide a defense for the [underlying] action," *id.*, Systems 2000 avers that the underlying claims against Systems 2000 seek over $15 million (*see* Reply at 8; *see also* ECF No. 185-6). That quantum more than *septuples* Travelers' primary limit of $2 million. (ECF No. 164 at 2.) Indeed, the largest underlying complaint seeks nearly $6 million (*see* ECF No. 185-2 at 3-4), meaning that,

after legal fees, that lawsuit *alone* could exhaust not only Travelers's $2 million primary coverage, but also GuideOne's $4 million excess coverage (*see* ECF No. 164 at 2).

Additionally, GuideOne's early correspondence with Travelers reveals that GuideOne had knowledge that the scale of loss would likely outpace Travelers's primary insurance limit, thereby supporting that GuideOne "brought a declaratory judgment action to avoid a looming duty to defend." *Liberty Surplus*, 420 F.3d at 69. Immediately following the fire, Travelers employee Michael J. Machado emailed GuideOne claims representative Kari Pearson, expressing Travelers' view that "the total reasonable damages" arising from the apartment fire "may exceed $4,000,000.00." (ECF No. 183-4 at 2.) GuideOne was further aware that Travelers' anticipated damages of $4 million was informed by specialized damages estimators retained to estimate the probable quantum of loss. (*Id.*; *see also* ECF No. 183-5 at 20 ("Young and Associates has inspected [the apartment building] and wrote an [estimate] for around $4 Mil (which means the subrogation estimate will be for more than [w]hat he stated).").)

Together, the fact that the damages claimed in the underlying lawsuits against Systems 2000 dwarf Travelers' $2 million limit and the evidence suggesting that GuideOne brought its declaratory judgment action after it learned that Travelers' $2 million limit would likely be exhausted are sufficient to show that GuideOne's duty to defend was "looming" and "likely will be" triggered. *Liberty Surplus*, 420 F.3d at 69. Accordingly, this case falls into the express carveout in *Liberty Surplus*.

Without a binding Second Circuit decision to guide the Court's resolution of the propriety of fees under New York law, the Court "must make its best estimate of how New York's highest court would rule in the case before it." *Ideal Mut. Ins. Co. v. Korean Reinsurance Corp.*, 657 F. Supp. 1174, 1176 (S.D.N.Y. 1987). Systems 2000 argues that the

New York Court of Appeals spoke to the precise issue—whether *Mighty Midgets* allows an insured to recover fees from an excess insurer who sues the insured for a declaration disclaiming a looming, likely-to-be-triggered duty to defend and loses—in *City Club Hotel*, in which the Court of Appeals held that a defensively-postured insured may recover fees "regardless of whether the insurer provided a defense to the insured." 822 N.E.2d at 780. (Mem. at 11.)

The Court disagrees. In *City Club Hotel*, the Second Circuit certified the following question to the Court of Appeals: "Whether, in a case in which an insurance company has brought a declaratory judgment action to determine that it does not have obligations under the policy but has defended in the underlying suit, a defendant prevailing in the declaratory judgment action should be awarded attorneys' fees expended in defending against that action?" *Id.* at 779. While the language used in *City Club Hotel* is admittedly broad, the Court does not understand *City Club Hotel*, which dealt with the propriety of fees in the context of a primary carrier, *see id.* at 778 (analyzing the insurer's "commercial general liability policy"), as giving the high court's imprimatur to awarding fees in the materially different posture of an insured who prevailed in a declaratory judgment action against an excess insurer.

Because "the Court of Appeals is silent on a point of New York law, [the Court] must 'apply the law as interpreted by New York's intermediate appellate courts' unless there is 'persuasive evidence that the New York Court of Appeals, which has not ruled on th[e] issue, would reach a different conclusion.'" *Williams v. City of New York*, No. 17-CV-4391, 2018 WL 4189515, at *4 (S.D.N.Y. Aug. 31, 2018) (quoting *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999)). In *RLI Insurance Company v. Smiedala*, 77 A.D.3d 1293, 1295 (4th Dep't 2010), an intermediate appellate court "reject[ed] the contention" that "an excess insurer whose coverage has not yet been triggered" is inoculated from an award of fees. In so holding,

the court explained that while the excess carrier's "duty to defend . . . may not have been triggered in the underlying action because the primary coverage has not been exhausted," an award of fees was nevertheless proper because the insured "was 'cast in a defensive posture by the legal steps plaintiff took in an effort to free itself from its policy obligations.'" *Id.* (quoting *Mighty Midgets*, 389 N.E.2d at 1085) (brackets omitted).

In light of *RLI Insurance* and in the absence of any indication that the New York Court of Appeals would run contrary to the logic of *RLI Insurance*, the Court concludes that, under *Mighty Midgets*, New York state courts would grant fees to an insured who prevailed in a declaratory judgment action pertaining to an excess carrier's looming, likely-to-be-triggered duty to defend. Because GuideOne's duty to defend is looming and likely to be triggered due to the exhaustion of Travelers' $2 million limit, the Court grants Systems 2000's motion for fees.[2]

The Court acknowledges that some tension exists between *RLI Insurance*, which broadly endorses the recoverability of fees in excess insurer cases, and *Liberty Surplus*, which generally denies the recoverability of fees in excess insurer cases unless the excess carrier's duty to defend is looming and likely to be triggered. *Compare RLI Ins.*, 77 A.D.3d at 1295, *with Liberty Surplus*, 420 F.3d at 69. For the avoidance of doubt, the Court's reliance on *RLI Insurance* does not—and could not—cast doubt on the vitality of the Second Circuit's holding in *Liberty Surplus*. Rather, the Court invokes the broader proposition of *RLI Insurance* (that an insured

[2] Because the Court grants Systems 2000's motion for fees under *Mighty Midgets*, the Court does not reach Systems 2000's argument that fees are proper because GuideOne acted in bad faith in denying coverage. (*See* Mem. at 18-24.) Still, the Court notes that the likelihood that Systems 2000 would prevail on its second argument is dubious. While the Court ultimately ruled against GuideOne on the question of its coverage obligations (*see* ECF No. 165), the Court so ruled after denying summary judgment (*see* ECF No. 144). The morass of complex factual and legal disputes underlying the Court's denial of summary judgment supports the existence of "an arguable difference of opinion between carrier and insured" that would preclude an award of fees on the basis of bad faith. *Hugo Boss*, 252 F.3d at 615 (quoting *Sukup*, 227 N.E.2d at 844).

may recover fees from an excess insurer) solely to answer the narrower question carved out from *Liberty Surplus* (whether an insured may recover fees from an excess insurer whose duty to defend is looming and likely to be triggered).

## IV. Conclusion

For the foregoing reasons, Systems 2000's motion for attorney's fees is GRANTED. The parties are directed to confer and submit a proposed judgment with respect to both the Court's findings of fact and order at ECF No. 165 and the instant order granting Systems 2000's motion for fees by September 14, 2026.

The Clerk of Court is directed to close the motion at ECF No. 183.

SO ORDERED.

Dated: August 31, 2026
New York, New York

J. PAUL OETKEN
United States District Judge